ALBERT COHN *v.* PEARL RIVER LUMBER COMPANY.

1. LAND COMMISSIONER. *Equity. Parties.*

A proceeding in equity to settle conflicting claims of individuals to land formerly owned by the state, and to require the land commissioner to issue patents upon invalid certificates of purchase of swamp and overflowed lands or to refund, without authority of law, the purchase money, and interest thereon, shows no ground for relief against that officer, and he is not a proper party to the same.

2. TITLE BY PRESCRIPTION. *Burden of proof.*

Where the complainant, in support of a bill asserting title by prescription, showed actual residence for a sufficient time, but one surveyor testified that the house used as a residence was on the land in controversy, while another testified to the contrary, it was not error to dismiss the bill, the burden of proof resting upon the complainant to satisfy the court of the fact of possession.

3. SWAMP AND OVERFLOWED LANDS. ' *Certificates of purchase. Absence of patent. Laws U. S.*, 1850, 1 *Brightly's Dig.*, p. 492. *Laws Miss.*, 1852, *p.* 99.

Where a complainant claims lands by virtue of a grant from the state, evidenced by a certificate of purchase of the "treasurer of

the swamp land commissioners for the eastern district of Pearl river," and the defendant denied the existence of any grant and that such commissioners were ever appointed or had authority to organize, or in fact organized, and it appeared that there was no authority in law for the organization of an "eastern" district, or that one was in fact organized, although there was a "southern" district, and it was not claimed that any patent was ever issued on such certificate by the secretary of state, the certificate is insufficient to establish title, since it was incumbent on the complainant to show substantial compliance with the statute in respect to such grants.

4. PURCHASE MONEY. *Refunding same. Laws* 1894, *ch.* 73. *Laws* 1896, *ch.* 46. *Laws* 1900, *ch.* 76. *Laws* 1902, *ch.* 74.

One claiming under the holder of a certificate of purchase from the treasurer of the swamp land commissioners, who subsequently buys the land from the state by mistake, is not entitled to have the money used in the subsequent purchase refunded, there being no statute of the state authorizing the same.

5. CERTIFICATE OF PURCHASE. *Failure of title. Refunding purchase money.*

Although title based on certificates of purchase of swamp and overflowed lands has failed, there is no statute authorizing a refunding of the purchase money. Even if the title had failed after issuance of patent by the secretary of state, the case would have been the same, under ch. 29, laws 1902, forbidding such use of the appropriation therein made.

FROM the chancery court of Lawrence county.

HON. HENRY C. CONN, Chancellor.

Cohn, appellant, was complainant in the court below; the Pearl River Lumber Company was defendant there.

Appellant, Cohn, filed his bill in the chancery court of Lawrence county against the Pearl River Lumber Company and J. M. Simonton, land commissioner of the state of Mississippi, in which he alleged that he was owner in fee of the following land in said county, to wit: N. half of S. E. quarter and S. W. quarter of N. E. quarter of section 26, township 8, range 10 E., and the E. half of N. W. quarter, section 25, township 8, range 10 E., and the N. E. quarter of S. E. quar-

ter, section 23, township 8, range 10 E., and deraigned his title as follows: The state of Mississippi to W. A. Fox, September 4, 1868, S. W. quarter of N. E. quarter and N. W. quarter of S. E. quarter, section 26, and N. E. quarter of S. E. quarter, section 23, township 8, range 10 E.; state of Mississippi to W. A. Fox, July 19 1855, E. half of N. W. quarter, section 25. The N. E. quarter of S. E. quarter, section 26, was claimed by adverse possession. W. A. Fox, by D. M. Lee, commissioner in the case of *Albert Cohn* v. *W. A. Fox,* in chancery court of Lawrence county, to A. Cohn, deed to all above-described land. He alleged that the written evidence of the transfers from the state consists of receipts or certificates of purchase given by the treasurer of the board of commissioners of swamp and overflowed lands; that said Fox paid for said lands, and went into immediate possession of same, and so remained in the actual adverse possession and occupation of it until ousted from the possession by complainant under the aforesaid sale; that the Pearl River Lumber Company is claiming title to the N. half of S. E. quarter and S. W. quarter of N. E. quarter of section 26, township 8, range 10 E., under and by virtue of a deed to it by G. W. Carlisle and H. A. Evans; that Carlisle and Evans assert title by virtue of a conveyance from A. H. Longino and J. M. Buckley, made July 3, 1891, who claimed title by virtue of a deed from the state of Mississippi, executed April 25, 1891; that these deeds were void because the state had no title to the lands attempted to be conveyed at the time of the sale to Longino and Buckley; that on the 28th day of April, 1891, complainant made application to, and purchased from, the state, for the sum of $100, the E. half of the N. W. quarter, section 25, township 8, range 10 E., under the mistaken impression and belief that Fox had never bought it from the state, when in truth he had bought and paid for it in July 1855; that on the 28th day of April, 1891, A. H. Simon made application to purchase

from the state of Mississippi the N. E. quarter of S. E. quarter, section 23, township 8, range 10 E., and afterwards complainant purchased it from Simon under the mistaken belief that Simon's title was superior to his own; he not knowing that Fox had bought the land from the state. The bill asked that the patents issued to Longino and Buckley on the 25th day of April, 1891, be annulled, and the land commissioner be directed to cancel same, and that he take up the receipts issued to Fox by the board of commissioners of swamp and overflowed lands, and issue patents thereon to complainant; that as to the E. half of the N. W. quarter, section 25, and the N. E. quarter of S. E. quarter of section 23, the land commissioner either issue patents on the receipts of the treasurer of the board of commissioners of swamp and overflowed lands to W. A. Fox in favor of complainant, or refund to complainant $150, the purchase money for same, with 6 per centum interest thereon. The Pearl River Lumber Company denied that any grant of such lands was made by the state under the laws of 1852; it denied that the counties Marion, Lawrence, Copiah, Pike, and the other counties named in said act, elected commissioners, as required by said act, to meet in Monticello on July 5, 1852; denied that there was any such appointments by the boards of police of said counties; denied that there were any such organization under it, in the town of Monticello, on said date; denied the election of Hiram Bonner as treasurer; denied that he gave bond; it denied that complainant has any title at all to the lands it bought, and that Fox ever purchased the same from the state; and denied that complainant had any title at all to said land. It admitted that the lands in sections 23, 25, and 26 aforesaid were swamp lands donated to the state of Mississippi by act of Congress of September 28, 1850. Complainant contended that the state of Mississippi granted all of said lands to the swamp land commissioners for the southern district of Mississippi, of Pearl River, by the act approved March 12, 1852;

that Hiram Bonner was its treasurer, and sold the land to W. A. Fox, who in turn mortgaged same to complainant, and that complainant purchased at the foreclosure sale under said mortgage. In support of this claim, he introduced in evidence a certificate of purchase as issued by Hiram Bonner to W. A. Fox, signed "Hiram Bonner, treasurer of the swamp land commissioners for the eastern district of Pearl River." He then introduced the trust deed to himself by Fox, and the commissioners' deed to himself under the foreclosure proceeding. Other testimony was introduced tending to show that Fox had been in actual possession and occupation of the land for fifty or more years, and some evidence to prove that Hiram Bonner acted as treasurer of the swamp land commissioners for the southern district of Pearl River. and was treated by the public as such, and held himself out to the public as such. From a decree dismissing complainant's bill, he appeals. The opinion states the other material facts.

*P. Z. Jones,* for appellant.

1. The act of 1852 was a present grant and transfer from the state of title of the swamp and overflowed lands mentioned in the act to the board of commissioners therein provided for. The language is that "there be and are hereby granted," etc. Acts 1852, p. 99. *Lessieur* v. *Price,* 12 How., 72; *Fremont* v. *United States,* 17 How., 42; *Schurlenberg* v. *Harriman,* 21 Wall., 60; *Van Wyck* v. *Knevals,* 106 U. S., 360; *Railroad Co.* v. *Smith,* 9 Wall., 95; *Leavenworth* v. *United States,* 92 U. S., 733; *French* v. *Fyan,* 93 U, S., 169; *Martin* v. *Marks,* 97 U. S., 345; *Missouri, etc., R. R. Co.* v. *Kansas, etc., R. R. Co.,* 97 U. S., 497; *St. Paul Ry. Co.* v. *Pacific Ry. Co.,* 139 U. S., 5; *Wright* v. *Roseberry,* 121 U. S., 500; *Grimmel* v. *Railroad Co.,* 103 U. S., 742. To the same effect is the holding of our own court in construing the swamp land grant to the state by the act of Congress, September 28, 1850. *Fore* v. *Williams,* 35 Miss., 533; *Funston* v. *Metcalf,* 40 Miss., 504.

2. Power was conferred by the act in question on the treasurer of the board of commissioners provided for to sell and dispose of said lands, and, although patents were to issue from the state upon certificates issued by the said treasurer to any purchaser, the title to particular tracts became perfect upon the identification of the lands and the designation of the person entitled to take, under the said board of commissioners, a patent not being necessary to invest title in the purchaser. Such was the construction of an act in substantially the same language in reference to lands on the Homo Chitto River, passed by the same legislature at the same session (Laws 1852, p. 134), by the United States circuit court of appeals. *Wineman* v. *Gastrell,* 53 Fed. Rep., 697 (S. C., 3 C. C. A., 621).

3. Hiram Bonner was in the possession and in the exercise of the duties and functions of a public office, one provided by law. He was recognized and dealt with by the public as an officer who had a right to sell and dispose of swamp and overflowed lands. He did sell and dispose of such lands, and the state conceded and admitted his power and authority to sell the same by honoring his receipts and certificates and by issuing patents thereon for other lands. He sold the land in this instance and was paid the price fixed by the state for the sale of said lands, and he issued certificates of purchase, the signature to such certificates being shown to be genuine and in his own proper handwriting. This was certainly sufficient to establish a prime facie case for the complainant and to relieve him of the necessity of introducing testimony to prove his appointment and qualification. 1 Green, Ev., §§ 83, 92, code 1857; art. 194, p. 138; code 1871, § 317; code 1880, § 415; code 1892, § 3065.

4. The two surveyors being at variance in their testimony as to whether the residence was situate on the forty acres claimed by adverse possession, the court should have ordered another survey to be correctly and accurately made, in order to ascertain the proper location of the residence.

5. The state has $150 of Cohn's money, to which it is not entitled. The land had been previously sold by the state through the treasurer of the said board of commissioners. The land commissioner cannot refund without an adjudication of the question of title by a court of competent jurisdiction, to which suit he must be a party. Code 1892, § 2588, and the laws amendatory thereof.

*R. N. Miller,* for the Pearl River Lumber Company, appellee.

It is manifest, when the pleadings in this case are considered, that it became necessary for the complainant to prove his title in the court below before he could have the Pearl River Lumber Company's title canceled as a cloud thereon. The issue was broadly made that he had absolutely no title, and the only pretense of title which he had to any of the lands was a certificate of purchase, which is signed by "Hiram Bonner, treasurer of the board of commissioners for the eastern district of Pearl River."

By turning to the law under which the certificate was issued (Laws of 1852, on pages 99, 100, and 101) it will be seen that there was no such board of commissioners provided for. The board therein provided for was to be styled "The Commissioners of the Southern District of Pearl River," and not "The Commissioners of the Eastern District of Pearl River."

In other words, there was no such board as that of which this man professed to be the treasurer provided for by law. This act provided for the appointment of two commissioners from each of the counties of Marion, Lawrence, Hancock Copiah, and Simpson, in whom was vested the title to the swamp and overflowed lands within these counties, when organized as provided by law. Of course an organization under the law was a *sine qua non* to the vesting of the title in the commissioner, and the evidence of the title in a purchaser was to be a patent issued by the secretary of state. All that the treasurer could

do was to receive and receipt for moneys and "issue certificates of purchase or grant, to sell land at the price fixed by the board, and to perform such other duties as the said board from time to time did order."

It is not pretended that any patent was ever issued upon this certificate, and the record is as silent as the grave in reference to the organization of any board of commissioners for "the southern district of Pearl River" or for the eastern district of Pearl River. Section 2 of the laws of 1852 provided, among other things, "that the swamp and overflowed lands lying and situated on Pearl River . . . be, and the same are hereby, transferred and granted to the commissioners of the southern district of Pearl River and their successors in office," and it is absurd to contend that a certificate issued by an unknown treasurer of another district of lands embraced in any of these counties carried with it the title or even the predicate for the title of any of the swamp and overflowed lands in this district.

The chancellor did not deliver a written opinion in the case, but simply dismissed the bill. We are not informed, from this record, upon what particular ground the same was dismissed, but the fact is there was no ground upon which the complainant could stand, and it might have been dismissed for any of the reasons mentioned in the answer or herein contended for.

It is insisted by adverse counsel that Bonner's acts ought to be recognized at least as that of a *de facto* officer, but not so. To start with, the office of treasurer of this board, provided for by section 4, is in no sense a public office, and the necessity which sometimes arises to hold the action of a *de facto* officer valid for the protection of the public does not arise here. Furthermore, there could be no such office as treasurer of a board until the board was organized, and no such organization is shown. There can be no office, either *de jure* or *defacto,* if there be no office to fill, and it does not appear from this record that there ever was such an organization as "the commissioners

of the southern district of Pearl River," and until there was such an organization, there was no place for a treasurer of the same, either *de facto* or *de jure.*

As this goes to the root of the whole matter, I do not think it is necessary to pursue the argument farther. Before closing, however, I will call attention to what the bill of exceptions shows in reference to the claim of adverse possession to forty acres of this land. There was a direct conflict of evidence as to whether the house of the elder Fox was built on lands in section 26, claimed by the Pearl River Lumber Company, or on lands in section 25, in which the Pearl River Lumber Company had no interest, and this renders it unnecessary to discuss the question of whether or not the statute of limitations applied at all.

*Monroe McClurg,* Attorney-General, for the land commissioner, appellee.

Appellant's claim to title by prescription must fail as to the N. E. one-quarter S. E. one-quarter, section 26, because the testimony preponderates in the direction of section 25, where the chancellor evidently found the long-occupied residence to be situate.

Appellant's claim of title to the N. W. one-quarter S. E. one-quarter and the S. W. one-quarter N. E. one-quarter, based upon the certificate of purchase issued to W. A. Fox in 1868 by Hiram Bonner, treasurer of the board of commissioners of the eastern district of Pearl River, is not sustained, because it was not shown that there was, in point of fact, an "eastern district" authorized by law, nor that such district was ever organized, nor that upon such certificate the secretary of state ever issued a patent.

Appellant's claim in sections 23 and 25, not claimed by the Pearl River Lumber Company, is not sustained against the state (the land commissioner), because it is not shown that there was any substantial compliance with the acts of congress

and the state disposing of said lands in trust for the purposes in said acts specified, which said acts, and substantial compliance with the material conditions therein named, constituted indispensable links in his claim of title. His claim, based upon adverse possession, is not supported by the testimony. No patent was ever issued.

The appellant has no claim upon the state to have refunded to him the money paid for the purchase of the lands in sections 23 and 25, not claimed by the lumber company, because the patents thereto granted in 1891 have not been canceled; they have not been questioned. He holds said lands by virtue of the patents issued in 1891 and must be satisfied therewith.

CALHOON, J., delivered the opinion of the court.

Complainant fails to show cause for relief against the land commissioner, who, in fact, was never a proper party to the contention.

As to the forty acres, to which Fox, under whom complainant claims, held no paper title whatever, but claimed by prescription, the county surveyor and some of the witnesses testified to facts showing that for more than fifty years the homestead had been occupied by the Foxes, and that it was on this land. The occupancy of the family residence for that period is not disputed; but there was abundant proof, including the testimony of another surveyor, that the homestead, the old family residence, was not in section 26 at all, but in section 25, on the land not claimed by the Pearl River Lumber Company. Counsel for appellant admits that "the two surveyors are hopelessly at variance as to whether the residence was on this forty." He insists that "the court should have ordered another survey to ascertain exactly where it was located." Undertaking to show his superior title, it was incumbent upon the appellant to satisfy the court that the residence was on this forty-acre tract, and, in absence of such satisfactory showing, the court properly found the facts against complainant's

contention. There was no obligation resting upon the court to order a third survey.

As to the other eighty acres, the certificate of sale, dated September 4, 1868, signed by "Hiram Bonner, treasurer of board of commissioners of the eastern district of Pearl River," is not sufficient of itself, and it is not pretended that a patent was issued upon the certificate by the secretary of state, as was required by ch. 34 of the Laws of 1852, providing for the organization of the southern district of Pearl River. It appears that there was no authority in law for the organization or existence of an eastern district. It is not shown that there was in point of fact an eastern district organized. Under the specific denials of the answer, and especially in view of the trust nature of the holding of these lands by the state and by the commissioners, it devolved upon the complainant to show that the requirement of the statutes, which formed indispensable links in his chain of title, were, at least substantially, complied with. He did not do that. The testimony wholly failed to establish title by prescription.

The complainant has no legal demand to have refunded to him the money paid into the state treasury in 1891 for the lands, described in the bill, not claimed by the Pearl River Lumber Company. He is not entitled to it, under ch. 73 of the Laws of 1894, because it is not shown that this land had been permitted, through mistake, to be sold to the state for taxes, and purchased afterwards from the state to protect the title. He is not entitled to it, under ch. 46 of the Laws of 1896, because it is not shown, by judgment or decree of any court, that his title had failed. There has been no cancellation of any patent issued by the state. No cause is shown the land commissioner for refunding, as provided by ch. 76 of the Laws of 1900, amended by ch. 74 of the Laws of 1902. It has not been shown that any patent was issued by the secretary of state upon the certificates of purchase issued by the commissioners of the Pearl River district to Chas. H. Fox

in 1855, and to W. A. Fox in 1868.   Even if the claim to
title based upon these certificates, or patents issued thereon,
has failed, there is no law authorizing the land commissioner
to refund the purchase money because of such failure; on the
other hand, ch. 29 of the Laws of 1902 expressly prohibits
the use of any of the appropriation therein made to refund
money "paid on account of any land obtained, or claim for
money paid, under any patent or certificate heretofore issued
by any secretary of state of Mississippi."

*Affirmed.*